**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 22, 2003**

*In re* LAPEER COUNTY CLERK

_____

LAPEER COUNTY CLERK,

    Plaintiff,

v                                No. 121400

LAPEER CIRCUIT COURT,

    Defendant,

and

COUNTY OF LAPEER,

    Intervening Defendant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

    The Lapeer County Clerk has filed a complaint for superintending control pursuant to MCR 3.302. We are called to determine whether Lapeer Circuit Court Local Administrative

Order No. 2002-01 (LAO 2002-01)[1] impermissibly assigns duties of the county clerk to the staff of the family division of the circuit court. We note, however, that a new plan for the operation of the family division of the circuit court must be agreed upon by July 1, 2003. See Supreme Court Administrative Order No. 2003-2. This administrative order requires that the clerk be given the opportunity to participate in the development of the plan provisions for managing court records, and the clerk may file a statement of concurrence or disagreement with the records- management portion of the plan. The order also calls for mediation of disagreements at the Supreme Court's direction. Because LAO 2002-01 is no longer the operative plan, having expired on July 1, 2003, we decline to comment on it specifically, but we issue this opinion pursuant to our rule-making authority, Const 1963, art 6, § 5, to provide guidance to courts as they craft future administrative orders. The complaint for superintending control is dismissed.

After careful review of the constitution, we conclude that the clerk of the court must have the care and custody of the court records. Further, the circuit court clerk is to

---

[1]Although plaintiff refers to LAO 2000-01 in her brief, the Lapeer Circuit Court is currently operating under LAO 2002-01. Plaintiff did recognize LAO 2002-01 in her supplemental pleading and explained that LAO 2002-01 did not alter her position.

perform ministerial duties that are noncustodial as required by the court.

Because a clerk's care and custody function is contemplated by Const 1963, art 6, § 14, as evidenced by our historical understanding of that provision, the circuit court cannot interfere with the circuit court clerk's constitutional obligation to perform that function. The custodial function, however, is a limited one. In acting as custodian of the records, the clerk is responsible for ensuring the safekeeping of the records. Having *care and custody* of the records, however, does not imply *ownership* of the records. Rather, the clerk's custodial function entails safeguarding the records on behalf of the circuit court, and making those records available to their owner, which is the circuit court. The clerk is also obligated to make the records available to the public, when appropriate.

Beyond having the care and custody of the court's records, the circuit court clerk is also to perform noncustodial ministerial duties as directed by the court. The determination of the precise noncustodial ministerial duties that are to be performed by the clerk, including their existence, scope, and form, is a matter of court administration and is therefore reserved exclusively for the judiciary under Const 1963, art 3, § 2, Const 1963, art 6, §

3

1, and Const 1963, art 6, § 5.  This judicial authority includes the discretion to create, abrogate, and divide between the clerk and other staff, noncustodial ministerial functions concerning court administration.

I. FACTUAL AND PROCEDURAL HISTORY

In *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 561-564; 640 NW2d 567 (2002), this Court summarized the factual history of the case.

In 1996 PA 388, the Legislature created the family division of the circuit court. See MCL 600.1001 *et seq.*, effective January 1, 1998. The act consolidated in the family division jurisdiction of many types of proceedings formerly heard in the circuit court and the probate court. See MCL 600.1021.

MCL 600.1011(1) provides for the development of a plan for the operation of the family division in each judicial circuit:

"Not later than July 1, 1997, in each judicial circuit, the chief circuit judge and the chief probate judge or judges shall enter into an agreement that establishes a plan for how the family division will be operated in that circuit . . . ."

On February 25, 1997, this Court issued Administrative Order No. 1997-1, entitled "Implementation of the Family Division of the Circuit Court." The order required all chief circuit and probate judges to "develop a plan for the implementation and operation of the family division, and to identify the manner in which services will be coordinated to provide effective and efficient services to families by the family division of the circuit court." Chief judges were required to seek input from judges, court staff, and other entities providing service to families within the jurisdiction or who will be affected by

4

the operation of the family division. The order required filing of plans with the State Court Administrative Office and approval by that office before implementation.

According to the affidavit of the chief judge of the Lapeer Circuit Court, he followed the implementation directive and met with the judges in the circuit. It was agreed that the family division would be staffed with the employees of the probate court, who were trained in and accustomed to dealing with juvenile cases and other matters formerly within the jurisdiction of the probate court. To implement the plan, Local Administrative Order No. 2000-1 was adopted on February 2, 2000, providing:

"In order to implement the changes required by the legislation creating the Family Division of the Circuit Court (PA 374 and 388 of 1996), to enhance and clarify the procedures to be followed in the new Family Court, to clarify the role of the County Clerk in the operations of the Family Court, to merge the procedures previously followed in juvenile, child protective proceedings and ancillary proceedings into the Family Court, to maintain the Court's data entry system, and to adopt new procedures for efficient administration of the Family Court, the Court issues the following administrative order:

"1. The County Clerk will continue to accept pleadings, maintain files and complete entries into the Court's data system in all domestic cases and PPOs and shall be responsible for the care and maintenance of those records.

"2. The Family Court staff will continue to accept filings, maintain files, prepare orders and complete entries into the Court's data system in all juvenile cases, child protective proceedings, name changes, adoptions, and ancillary proceedings and shall be responsible for the care and maintenance of those records.

"3. The Family Court staff will be responsible for scheduling all juvenile cases, child protective proceedings, name changes, adoptions, and ancillary

5

proceedings. In addition, the Family Court staff will be responsible for making referrals, scheduling hearings, preparation of orders and arranging pretrials and trials in domestic cases. The Family Court staff will make appropriate entries into the Court's data systems of these proceedings.

"4. The County Clerk staff will continue to manage the motion day dockets, no-progress docket and non-service dismissals in domestic cases. The County Clerk staff will continue to attend the domestic motion docket sessions of the Family Court and make appropriate entries into the Court's data system of those proceedings.

"5. The Family Court staff shall continue to be responsible for all filing fees, receipts, disbursements and accountings for support payments, restitution, administrative and program fees, and child care funds received in juvenile cases, child protective proceedings, name changes, adoptions and ancillary proceedings. The County Clerk shall continue to accept all filing fees in domestic cases for the Family Court.

"6. Local Administrative Order 1999-2 is hereby rescinded and replaced by this order.

"This order is issued pursuant to MCR 8.112 and will be effective upon approval by the State Court Administrator. The matters covered in this order will be reviewed on an ongoing basis and this order will expire on December 31, 2000, unless extended by order of the Court."[2]

On February 9, 2000, the Acting Director of Trial Court Services for the State Court Administrative Office advised the circuit court that

---

[2]As stated above, LAO 2002-01 replaced LAO 2000-01. The only substantive change was that LAO 2002-01 gave the clerk responsibility for proceedings regarding name changes and deleted the references to name changes found in paragraphs 2, 3, and 5.

"we have reviewed the above referenced Administrative Order and find that it conforms with the requirements of MCR 8.112(B). This order is being accepted and filed until advised by your court of any change."

The Lapeer County Clerk and the Michigan Association of County Clerks filed this original action in the Court of Appeals requesting a writ of superintending control. Their complaint alleged, among other things:

"17. The Court's Administrative Order, No. 2000-1 violates Michigan's Constitution, laws, and court rules by preventing the Clerk from performing her constitutional and statutorily mandated duties. Specifically, by issuing and implementing Administrative Order No. 2000-1, the Court usurped the Clerk's constitutional and statutory duties with respect to Paragraphs 2, 3, and 5 of the Order.

* * *

"18. Both family division judges in Lapeer County (Judges Preisel and Higgins) prohibit the County Clerk from performing her circuit court duties with respect to juvenile matters by preventing her from opening new cases, maintaining the care and custody of the court records, entering data into the Court's JIS system, performing court room functions, preventing the Clerk from assisting the public as well as other judicial staff and employees, and accounting for the court's finances.

* * *

"20. Judges Higgins and Preisel further refuse to allow the County Clerk to perform as Clerk of the circuit court with respect to trials."

Plaintiffs' complaint requested the Court of Appeals to declare unlawful the Lapeer Circuit Court administrative order, and to direct the judges of the family division of the Lapeer Circuit Court to comply with Const 1963, art 6, § 14, statutes, and court rules by permitting the county clerk to perform her legally authorized duties as

7

clerk of the court for the family division of the circuit court.

Lapeer County, the local funding unit, intervened. The Court of Appeals granted the county clerk's request for superintending control. *In re Lapeer Co Clerk*, 242 Mich App 497; 619 NW2d 45 (2000). This Court granted defendants' application for leave to appeal[3] and issued an opinion per curiam holding that the Court of Appeals lacked subject-matter jurisdiction over plaintiff's complaint and reversing the judgment of the Court of Appeals. 465 Mich 574.

Plaintiff then filed a complaint with this Court for an order of superintending control, and the case was scheduled for oral argument as on leave granted.[4]

## II.   STATEMENT OF JURISDICTION

This Court has jurisdiction over plaintiff's complaint for an order of superintending control as an original action. *Id.*

## III.   CONSTITUTIONAL RULE-MAKING AUTHORITY

As stated above, the contested administrative order, LAO 2002-01 must be replaced by a new administrative order by July 1, 2003. See Supreme Court Administrative Order No. 2003-2. 467 Mich ___ (2003). Under this administrative

---

[3]463 Mich 969 (2001).

[4]466 Mich 1222 (2002).

8

order, the clerk must be given the opportunity to participate in the development of the plan provisions for managing court records, and the clerk may file a statement of concurrence or disagreement with the records management portion of the plan. The order also calls for mediation of disagreements at the Supreme Court's direction.

In light of the impending new local administrative order, we need not specifically comment on the now-superseded plan and, instead, address it in our capacity to make rules for the judiciary pursuant to Const 1963, art 6, § 5,[5] which entrusts this Court with the authority and duty to prescribe general rules governing the practice and procedure of all courts in the state. Accordingly, we invoke our rule-making authority to clarify the underlying issue, which undoubtedly affects the practice and procedure of the courts of this state. Therefore, we find it appropriate to address the issue of the constitutional functions of the circuit court clerk to provide guidance to circuit courts in crafting future administrative

---

[5]Const 1963, art 6, § 5 provides:

> The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited.

9

orders.

## IV.  CONSTITUTIONAL ANALYSIS

### A.  THE CONSTITUTIONAL DUTIES OF A CIRCUIT COURT CLERK

The threshold inquiry is what duties, if any, inhere in the position of clerk of the circuit court.

The office of the county clerk is constitutionally based, thus we commence our analysis by examining the constitution itself.  When interpreting the constitution, our task is to give effect to the common understanding of the text:

> "A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.*  'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people*, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding*, and ratified the instrument in the belief that that was the sense designed to be conveyed.' (Cooley's Const Lim 81)." [*Traverse City School Dist v Attorney Gen*, 384 Mich 390, 405; 185 NW2d 9 (1971).]

Words must be given their ordinary meanings, and constitutional convention debates and the address to the people are relevant, although not controlling.  *People v Nash*, 418 Mich 196, 209; 341 NW2d 439 (1983) (opinion by BRICKLEY, J.).  Further, every provision must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another.  *In re Probert*, 411

10

Mich 210, 232-233 n 17; 308 NW2d 773 (1981).

Under our constitution, the county clerk serves in the unique posture of being both an executive officer and an officer of the judicial branch. Const 1963, art 7, § 4 provides:

> There shall be elected for four-year terms in each organized county a sheriff, *a county clerk*, a county treasurer, a register of deeds and a prosecuting attorney, *whose duties and powers shall be provided by law*. The board of supervisors in any county may combine the offices of county clerk and register of deeds in one office or separate the same at pleasure. [Emphasis added.]

Const 1963, art 6, § 14 provides:

> The clerk of each county organized for judicial purposes or other officer performing the duties of such office as provided in a county charter shall be clerk of the circuit court for such county. The judges of the circuit court may fill a vacancy in an elective office of county clerk or prosecuting attorney within their respective jurisdictions.

In providing that the county clerk is to be the clerk of the circuit court, Const 1963, art 6, § 14 is silent regarding specific duties to be performed by the clerk in its judicial capacity. In fact, although since 1835[6] the constitution has provided that the county clerk shall also function as clerk of the court, the duties of the clerk in its judicial capacity have never been enumerated in any version of our constitution. Because the text of the constitution itself provides no clear

---

[6]See Const 1835, art 6, § 5.

11

answer, we must examine other sources to ascertain the common understanding of the term "clerk of the circuit court."

The office of clerk of the court existed in Michigan before statehood. In 1823, the United States Congress passed an act that provided, "there shall be but one clerk of the Supreme Court of the territory of Michigan, who shall perform all the duties of the clerk of said court[.]" See *Scott v Detroit Young Men's Society's Lessee*, 1 Doug 119, 140 (1843). The county clerk was charged with the duties of the clerk of the circuit court in 1830. *Whallon v Circuit Judge for Ingham Co*, 51 Mich 503, 511; 16 NW 876 (1883). The office of the circuit court clerk was incorporated into our constitution in 1835. Const 1835, art 6, § 5. Evidence suggests that the provision in the 1835 constitution arose out of necessity, for at that time

> judges travelled a circuit and could not suitably carry out the ministerial functions of the circuit court. Since a county clerk was maintaining county records and files, it was natural to delegate the judicial ministerial functions to the county clerk's office. Circuit court documents could then be filed and maintained daily at a fixed location in each county, instead of at those select times the circuit judge was in the county. [Metzger & Conley*, Relationship of the county clerk to the circuit court*, 60 Mich BJ 849 (1981).]

In other words, it appears that the people ratifying Const 1835, art 6, § 5 understood that the circuit court clerk was to have the care and custody of court records. As such, we

12

conclude that the clerk has a constitutional obligation to have the care and custody of the circuit court's records and that the circuit court may not abrogate this authority. See *In the Matter of Head Notes to the Opinions of the Supreme Court*, 43 Mich 640, 643; 8 NW 552 (1880)("the essential duties [of a constitutional officer] cannot be taken away, as this in effect would result in the abolishment of the office . . .").

In addition to the clerk's custodial duties, there are undoubtedly numerous other duties that have historically been performed for the circuit court by the clerk. Although the complete scope of these noncustodial duties is unclear, what *is* clear is that throughout the history of the office, these noncustodial duties have been purely ministerial in nature. For example, the Revised Statutes of 1838, tit 1, ch 6, § 10, provided that upon court recess, the clerk of the circuit court was to make a complete record of all cases finally determined and present the record to the judge at the start of the next term. In 1840, the law provided that the court clerk would be paid ten cents a folio for making a complete record of a case if required to do so by a party. See *Emery v Whitwell*, 6 Mich 474, 486 (1859).[7] Court clerks also computed

---

[7]Significantly, these early laws setting forth the duties of the clerk were subject to repeal, demonstrating that although the clerk's duties remained ministerial, the exact nature of the duties was subject to change. *Id.*

amounts due on bonds,[8] generated transcripts,[9] filed transcripts,[10] entered and docketed judgments,[11] advertised writs of judgment,[12] certified and filed stipulations,[13] received court papers,[14] transmitted certified copies of proceedings to the Supreme Court,[15] certified various court documents,[16] and accepted court filings.[17] Court clerks could not undertake nonministerial functions, such as assessing damages in a contested action,[18] exercising any judicial power over individuals,[19] or taking complaints and issuing warrants.[20] In addition, it was well understood that these noncustodial ministerial functions were subject to change.

---

[8]*Id.* at 487.

[9]*Lathrop v Hicks,* 2 Doug 223, 227 (1846).

[10]*Jewett v Bennett*, 3 Mich 198, 199 (1854).

[11]*Id.*

[12]*Drew v Dequindre*, 2 Doug 93, 96 (1845).

[13]*Farrand v Bentley*, 6 Mich 281, 283 (1859).

[14]*Id.*

[15]*Duffield v Detroit*, 15 Mich 474, 478 (1867).

[16]*Id.* at 477.

[17]*Clay v Penoyer Creek Improvement Co*, 34 Mich 204, 206 (1876).

[18]*O'Flynn v Holmes*, 8 Mich 95, 97 (1860).

[19]*People v Swift*, 59 Mich 529, 547; 26 NW 694 (1886).

[20]*People v Colleton*, 59 Mich 573, 576; 26 NW 771 (1886).

*Emery, supra* at 486 (stating that, although at one time the clerk was required to make records of proceedings, the statutes requiring the records were repealed).

There is no evidence that the common understandings of the custodial and ministerial functions of the circuit court clerk have changed significantly since the enactment of the constitution of 1835. See, e.g., *Sabbe v Wayne Co*, 322 Mich 501, 503; 33 NW2d 921 (1948) (describing the role of county clerks in the circuit court as "purely ministerial"). Therefore, it appears that at the time the people ratified the constitution of 1963, the common understanding of the term "clerk of the circuit court" was that the clerk was to (1) have the care and custody of the court records and (2) perform noncustodial duties that are ministerial in nature, although those noncustodial ministerial duties are subject to change.

B. THE CUSTODIAL FUNCTION

As stated above, the historical evidence surrounding Const 1963, art 6, § 14 suggests that the circuit court clerk is obliged to have the care and custody of the court's records. Because we conclude that this custodial function is one contemplated by the ratifiers of the constitutional provision, the constitution must be interpreted as mandating this role. Accordingly, we hold that the circuit court clerk must perform the custodial function, which the circuit court

15

may not abrogate.

The scope of the custodial function is limited. Historically, circuit court clerks acted as guardians of court records, ensuring their safekeeping as the judges rode from circuit to circuit. The circuit court clerk's role of having the care and custody of the records must not be confused with *ownership* of the records. As custodian, the circuit court clerk takes care of the records for the circuit court, which owns the records. Nothing in the constitutional custodial function gives the circuit court clerk independent ownership authority over court records. Accordingly, the clerk must make those records available to their owner, the circuit court. The clerk is also obligated to make the records available to members of the public, when appropriate.

### C.  THE NONCUSTODIAL MINISTERIAL FUNCTION

In addition to the custodial function, the constitution contemplates noncustodial ministerial duties. In order to determine the scope of a circuit court clerk's noncustodial ministerial duties, because they are subject to change, we must first ascertain who has the authority to define the noncustodial ministerial duties of the court clerk. Again, we turn first to the constitutional text. Our constitution specifically addresses the doctrine of separation of powers:

> The powers of government are divided into three branches: legislative, executive and

16

judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

As stated above, the constitution expressly provides that the county clerk, an executive officer, shall also be an officer of the judicial branch. It does not follow, however, that the executive branch then has the ability to control that aspect of the judicial branch.

Const 1963, art 6, § 1 provides:

The judicial power of the state is vested *exclusively* in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected and serving in each house. [Emphasis added.]

Further, Const 1963, art 6, § 5 provides:

The supreme court *shall* by general rules *establish, modify, amend and simplify the practice and procedure in all courts of this state*. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited. [Emphasis added.]

Again, no constitutional provision should be construed to nullify or impair another. *In re Probert*, *supra*. To interpret Const 1963, art 7, § 4 ("[t]here shall be . . . a county clerk . . . whose duties and powers shall be provided by law") to grant the executive branch the power to dictate the ministerial administration of the circuit court would

17

nullify both art 6, § 1 (providing that the judicial power of the state is vested *exclusively* in one court of justice) and art 6, § 5 (providing that the *Supreme Court* shall establish, modify, amend, and simplify the practice and procedure in all courts of this state).

Further, to so interpret art 7, § 4 would violate the separation of powers doctrine of art 3, § 2. Although the county clerk is expressly made an officer of the judiciary, neither art 7, § 4 nor art 6, § 14 expressly provides that the county clerk or any other executive-branch official may prescribe the ministerial operations of court practice and procedure. Rather, that power is expressly and exclusively vested in the Supreme Court under art 6, § 5:

> The judicial powers derived from the Constitution include rulemaking, supervisory and other administrative powers as well as traditional adjudicative ones. They have been exclusively entrusted to the judiciary by the Constitution and may not be diminished, exercised by, nor interfered with by the other branches of government without constitutional authorization. [*In re 1976 PA 267*, 400 Mich 660, 663; 225 NW2d 635 (1977).]

Indeed, the power of the judiciary to direct its ministerial operations has been noted for well over a century. In *Allor v Bd of Auditors of Wayne Co*, 43 Mich 76, 97; 4 NW 492 (1880), this Court held:

> [N]o court, in the exercise of its functions, can be lawfully subjected to the control or interference of any executive or ministerial authority, or can receive directions for any

18

> purpose except from such other courts as are authorized by the Constitution to have "superintending control over inferior courts." No court has a right to allow any other interference or to submit to it.
>
> And in this same regard it is also very clearly settled by the Constitution that judicial power can only be vested in courts and judicial officers[.]

In *Whallon*, *supra* at 508, the Court explained that the circuit court clerks "are officers of the court, and subject to its direction in all things necessary to a proper administration of the law during its sessions." Further, in *Smith v Kent Circuit Judge*, 139 Mich 463, 464; 102 NW 971 (1905), the Court noted that the clerk of the circuit court, although also an executive officer, is subject to all legitimate court orders:

> The county clerk is a constitutional officer (Const. § 12, art. 6), and is by that section made the clerk of the circuit court of such county. Section 221, 1 Comp. Laws, requires him to attend every term of court; gives him the care of all the records, seals, books, and papers pertaining to the office of the clerk of such court, and filed or deposited therein. *Neither the Constitution nor the statute prescribes his duties. He is therefore subject to all the legitimate orders of the court of which he is clerk.* [Emphasis added.]

Finally, in *McDougall v Schanz*, 461 Mich 15, 30-31; 597 NW2d 148 (1999), this Court recently addressed its exclusive constitutional authority regarding rules governing practice and procedure in the administration of the courts and concluded that if a court rule concerns only court administration, it prevails over contrary statutory

19

provisions.

Therefore, we hold that prescribing the exact nature of a clerk's noncustodial ministerial functions is a matter of practice and procedure in the administration of the courts. Accordingly, the authority to prescribe the specific noncustodial ministerial duties of the clerk of the circuit court lies exclusively with the Supreme Court under Const 1963, art 6, § 5.

As such, the judiciary is vested with the constitutional authority to direct the circuit court clerk to perform noncustodial ministerial duties pertaining to court administration as the Court sees fit. This authority includes the discretion to create duties, abolish duties, or divide duties between the clerk and other court personnel, as well as the right to dictate the scope and form of the performance of such noncustodial ministerial duties.

### IV.  EFFECT OF STATUTES AND COURT RULES

Prescribing the duties that arise under the clerk's noncustodial ministerial function is a matter of court procedure and administration. We have already concluded that the constitution grants this Court the exclusive authority to determine, as a matter of court administration, which duties comprise the noncustodial ministerial functions of the circuit court clerk and how those duties are to be performed.

20

Therefore, should the Legislature enact statutory duties that conflict with this Court's enumeration of duties in the court rules, the court rules must prevail. *McDougall, supra.* This does not mean, however, that any statute pertaining to the duties of the clerk of the circuit court violates separation of powers. Rather, if there is no inherent conflict between the statutes and the court rules, "[w]e are not required to decide whether [the] statute is a legislative attempt to supplant the Court's authority." *Id.* at 24, quoting *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996).

We conclude that the statutes pertaining to the duties of the county clerk are in harmony with our court rules. MCR 8.110(C)(3) clearly provides that the chief judge of the court has the power to direct matters relating to the administration of the court:

> As director of the administration of the court, *a chief judge shall have administrative superintending power and control over* the judges of the court and *all court personnel* with authority and responsibility to:
>
> (a) supervise caseload management and monitor disposition of the judicial work of the court;
>
> (b) direct the apportionment and assignment of the business of the court, subject to the provisions of MCR 8.111;
>
> (c) determine the hours of the court and the judges; coordinate and determine the number of judges and court personnel required to be present at any one time to perform necessary judicial and administrative work of the court, and require their

21

presence to perform that work;

     (d)    supervise the performance of all court personnel, with authority to hire, discipline, or discharge such personnel, with the exception of a judge's secretary and law clerk, if any;

     (e)    coordinate judicial and personnel vacations and absences, subject to the provisions of subrule (D);

* * *

     (h) effect compliance by the court with all applicable court rules and provisions of the law; and

     (i) *perform any act or duty or enter any order necessarily incidental to carrying out the purposes of this rule.* [Emphasis added.]

MCR 8.105 sets forth the general duties of circuit court clerks:

     (A) Office Hours. The office of the clerk of every court of record must be open, and the clerk or deputy clerk must be in attendance, during business hours on all days except Saturdays, Sundays, and legal holidays, and at other times that the court is in session.

     (B) Court Records and Reporting Duties. The clerk of every circuit court shall maintain court records[21] and make reports as prescribed by MCR 8.119.

     (C) Notice of Judgments, Orders, and Opinions. Notice of a judgment, final order, written opinion or findings filed or entered in a civil action in a court of record must be given forthwith in writing

---

[21]We note that, in this context, it is clear that the word "maintain" refers to the clerk's custodial duty. See *Random House Webster's College Dictionary* (2001), which defines "maintain" as "1. to keep in existence or continuance; preserve."

22

by the court clerk to the attorneys of record in the case, in the manner provided in MCR 2.107.

(D) Filing of Assurance of Discontinuance Under MCL 445.870 . . . . The clerk of every judicial circuit shall, without charge, receive and file an assurance of discontinuance accepted by the Attorney General under MCL 445.870 . . . .

MCR 8.119 sets forth the duties of circuit court clerks regarding court records and reports:

(A) Applicability. This rule applies to all actions in every trial court except that subrule (D)(1) does not apply to civil infractions.

(B) Records Standards. The clerk of the court shall comply with the records standards in this rule and as prescribed by the Michigan Supreme Court.

(C) Filing of Papers. The clerk of the court shall endorse on the first page of every document the date on which it is filed. Papers filed with the clerk of the court must comply with Michigan Court Rules and Michigan Supreme Court records standards. The clerk of the court may reject papers which do not conform to MCR 2.113(C)(1) and MCR 5.113(A)(1).

(D) Records Kept by the Clerk. The clerk of the court of every trial court shall keep records *in the form and style the court prescribes and in accordance with Michigan Supreme Court records standards and local court plans*. A court may adopt a computerized, microfilm, or word-processing system for maintaining records that substantially complies with this subrule.

(1) Indexes and Case Files. The clerk shall keep and maintain records of each case consisting of a numerical index, an alphabetical index, a register of actions, and a case file in such form and style as may be prescribed by the Supreme Court. . . .

* * *

23

(2) Calendars. The clerk may maintain calendars of actions. A calendar is a schedule of cases ready for court action that identifies times and places of activity.

* * *

(4) Other Records. The clerk shall keep in such form *as may be prescribed by the court*, other papers, documents, materials, and things filed with or handled by the court including but not limited to wills for safekeeping, exhibits and other discovery materials, requests for search warrants, marriage records, and administrative activities.

(E) Access to Records. The clerk may not permit any record or paper on file in the clerk's office to be taken from it without the order of the court.

(1) Unless access to a file, a document, or information contained in a file or document is restricted by statute, court rule, or an order entered pursuant to subrule (F), any person may inspect pleadings and other papers in the clerk's office and may obtain copies as provided in subrule (E)(2) and (E)(3).

(2) If a person wishes to obtain copies of papers in a file, the clerk shall provide copies upon receipt of the reasonable cost of reproduction. If the clerk prefers, the requesting person may be permitted to make copies at personal expense under the direct supervision of the clerk. Except for copies of transcripts or as otherwise directed by statute or court rule, a standard fee may be established for providing copies of papers in a file.

* * *

(4) Every court, shall adopt an administrative order pursuant to MCR 8.112(B) to

(a) make reasonable regulations necessary to protect its public records and prevent excessive and unreasonable interference with the discharge of

its functions;

* * *

(G) Reporting Duties.

(1) The clerk of every court shall submit reports and records as required by statute and court rule.

(2) The clerk of every court shall submit reports or provide records as required by the State Court Administrative Office, without costs. [Emphasis added.]

MCL 600.571 provides:

The county clerk of each county shall

(a) Be the clerk of the circuit court for the county.

(b) Attend the circuit court sessions.

(c) Appoint in counties with more than 1 circuit judge or having more than 100,000 population but less than 1,000,000 a deputy for each judge and approved by the judge to attend the court sessions. Each deputy shall receive a salary of at least $6,500.00.

(d) On the first day of each court term render an accounting to the court of all funds, stocks or securities deposited with the court clerk pursuant to court order.

(e) Within 10 days after the beginning of each court term pay over to the county treasurer all fees belonging to the county received during the preceding court term together with an accounting thereof.

(f) Have the *care and custody* of all the records, seals, books and papers pertaining to the office of the clerk of such court, and filed or deposited therein, and shall provide such books for entering the proceedings in said court, *as the judge thereof shall direct*.

25

(g) *Perform such duties as may be prescribed by court rule*. Whenever in any statute of this state, the designation "register in chancery" occurs, it shall be deemed to apply to the clerk of the circuit court. [Emphasis added.]

We find no conflict in the court rules and the statutes in this area, and note that this reinforces our analysis of the historical understanding of the role of the circuit court clerk as discussed above. MCL 600.571(f) and (g) merely codify the historical understanding of the dual nature of the clerk's function: subsection f refers to the custodial function, while subsection g refers to the noncustodial ministerial function.

In addition, MCL 600.1007 provides:

As with circuit court, the county clerk is the clerk of the court for the family division of the circuit court.

Finally, MCL 600.1027 provides, in pertinent part:

(1) At the time of commencing an ancillary guardianship or limited guardianship proceeding in the family division of circuit court, the party commencing the proceeding shall pay a $50.00 filing fee *to the family division of circuit court*.

* * *

(3) The clerk of the court, on or before the fifth day of the month following the month in which any fees are collected under this section, *shall transmit* to the county treasurer all fees collected under this section during the preceding month. Within 15 days after receiving the fees, the county treasurer shall transmit all fees collected to the state treasurer for deposit in the state court fund created by section 151a. [Emphasis added.]

26

Taken together, the statutes merely reiterate art 6, § 14 and provide that the circuit court clerk must have the care and custody of court records and exercise the duties prescribed by court rule, including attending court sessions and transmitting fees received. Although the statutes, like the court rules, set forth broad areas of responsibility, they refrain from specifying exactly what those responsibilities entail and how the clerk shall perform those responsibilities. Rather, the statutes provide that either the judge[22] or the court rules[23] shall prescribe the exact noncustodial ministerial duties of the clerk. In so doing, the statutes codify the historical custodial and noncustodial, ministerial functions of the circuit court clerks.

## VI. CONCLUSION

The constitutionally created office of the clerk of the circuit court must have the care and custody of the court records and can perform noncustodial ministerial functions of the court. The custodial function requires that the clerk act as guardian of the records, providing for their safekeeping. The clerk's noncustodial ministerial duties are directed by the Court, as the determination of the precise

---

[22]MCL 600.571(f).

[23]MCL 600.571(g).

27

noncustodial ministerial duties to be performed is a matter of court administration entrusted exclusively to the judiciary under Const 1963, art 3, § 2 and Const 1963, art 6, §§ 1, 5.

The complaint for superintending control is dismissed.

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

CAVANAGH, J.

I concur in the result only.

Michael F. Cavanagh

28

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

*In re* LAPEER COUNTY CLERK

_____

LAPEER COUNTY CLERK,

    Plaintiff,

v                                                                No. 121400

LAPEER CIRCUIT COURT,

    Defendant,

and

COUNTY OF LAPEER,

    Intervening Defendant.
_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree that intervening circumstances render moot the issues presented in this case. However, they will arise again and require judicial resolution. Therefore, I agree that the Court should address the issues at this time. I write separately to indicate that I believe that certain of the majority's findings and its legal analysis are incorrect.

The complex environment of the trial court requires that we allow chief judges to manage the day-to-day operation of their courts. *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 298-299; 586 NW2d 894 (1998). Accordingly, our court rules provide chief judges latitude in adapting the administration of their courts to their particular circumstances.[1]

---

[1]For instance, MCR 8.110(C) provides, in part:

(2) As the presiding officer of the court, a chief judge shall:

* * *

(c) initiate policies concerning the court's internal operations and its position on external matters affecting the court;

* * *

(3) As director of the administration of the court, a chief judge shall have administrative superintending power and control over the judges of the court and all court personnel with authority and responsibility to:

(a) supervise caseload management and monitor disposition of the judicial work of the court,

(b) direct the apportionment and assignment of the business of the court, subject to the provisions of MCR 8.111;

* * *

(f) supervise court finances, including financial planning, the preparation and presentation of budgets,and
(continued...)

Our Legislature is also cognizant of the needs of the circuit courts. Hence, it drafted MCL 600.571 to give them discretion in determining how best to utilize the services of the county clerks. I find no conflict between the statutes regulating the duties of the clerk of the circuit court and our court rules.

The majority apparently agrees with this conclusion. *Ante* at 22-29. Yet, it engages in further analysis. In doing so, it holds that, as a matter of constitutional law, the judiciary alone may regulate the noncustodial duties of the clerk of the circuit court. By reaching this issue, the majority violates the principle that we will not address a constitutional question unless necessary. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). However, because I do not believe that the majority's analysis supports its conclusion, I offer the following counter-analysis.

COUNTER-ANALYSIS

The Michigan Constitution vests this Court with the

_____

[1](...continued)
financial reporting;

\* \* \*

  (i) perform any act or duty or enter any order
necessarily incidental to carrying out the purposes
of this rule.

3

authority to prescribe the rules of practice and procedure in the courts. Const 1963, art 6, § 5. These attributes of judicial authority "may not be diminished, exercised by, nor interfered with by the other branches of government without constitutional authorization." *In re 1976 PA 267*, 400 Mich 660, 663; 255 NW2d 635 (1977).

Moreover, this Court has long recognized that

[i]t is simply impossible for a judge to do nothing but judge; a legislator to do nothing but legislate; a governor to do nothing but execute the laws. The proper exercise of each of these three great powers of government necessarily includes some ancillary inherent capacity to do things which are normally done by the other departments.

Thus, both the legislative department and the judicial department have certain housekeeping chores which are prerequisite to the exercise of legislative and judicial power. And, to accomplish those housekeeping chores both departments have inherently a measure of administrative authority not unlike that primarily and exclusively vested in the executive department. [*Wayne Circuit Judges v Wayne Co*, 383 Mich 10, 20-21; 172 NW2d 436 (1969), superseded by 386 Mich 1; 190 NW2d 228 (1971)(On Rehearing).]

The majority carries this rationale much further, asserting that, if art 7, § 4 applied to the county clerk's duties as clerk of the court, it would necessarily violate the separation of powers clause. I believe this assertion is inaccurate.

Our constitution, in detailing the requirements of the separation of powers, provides:

4

> The powers of the government are divided into three branches; legislative, executive, and judicial. No person exercising the powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

Thus, while our constitution mandates separation of powers, that mandate is qualified to allow the exercise of one branch's power by another branch when the constitution expressly provides for it. It appears to me that art 7, § 4 contains one such qualification.

Article 7, § 4 provides that: "There shall be . . . a county clerk . . . whose duties shall be provided by law." We have consistently held that, when the constitution requires that details be provided by law, the Legislature alone can provide those details. *People v Bulger*, 462 Mich 495, 508-509; 614 NW2d 103 (2000).[2] There is no reason to deviate in this case from our previous holdings.

There is some support for the conclusion that the drafters of the constitution made the county clerk the clerk of the circuit court to provide a check against judicial power.[3] Consequently, it is possible that art 7, § 4 was

---

[2]The majority apparently believes that, if it interprets art 7, § 4 so that it applies to the clerk's ministerial noncustodial duties, the *executive branch* would be empowered to define those duties. *Ante* at 18-19. I believe this is an error that has misled the majority in its analysis.

[3]See, e.g., the comments of Delegate Paul V. Gadola, a
(continued...)

5

intended to set limits on the power of the judiciary by taking advantage of the constitutional qualification to separation of powers. If this were the case, there would be no discord between art 7, § 4 and art 3, § 2.[4]

If we ascribe to art 7, § 4 the meaning that I believe the framers of the constitution intended, it would scarcely render ineffectual the power of the judicial branch. Although the Legislature would have the authority to enact laws regulating the duties of the clerk of the circuit court, it would be bound by the same principles that constrain us. Thus, it could not extend the duties of the clerk beyond

---

[3](...continued)
retired circuit judge, who stated:

> Remember that the clerk is the one that has charge of all the records of the circuit court. The clerk writes the journal. And, you know, the circuit judges can't conceal too much, because every day there is a diary written of their doings and they sign it every day, and you can find it 1,000 years from now if the records are kept. [1 Official Record, Constitutional Convention 1961, p 1371.]

[4]There are possibly other policy considerations at work as well. For instance, the drafters could have been concerned about cost and efficiency. By providing that the county clerk serves as a depository for most of the documents in a county, the drafters potentially made access to important documents more efficient. Also, the drafters may have been concerned that requiring the clerk to perform all the ministerial duties of the circuit court would be too costly. Thus, they may have included a fiscal pressure valve within art 7, § 4 to allow the Legislature to limit the clerks' duties when the clerks become inefficient.

6

those that are purely ministerial; it could do no more than designate which ministerial noncustodial duties the clerk might perform.

I conclude that the constitution has provided the Legislature with the authority to define and limit the ministerial noncustodial duties that the clerk of the circuit court may perform. However, because neither the constitution nor any legislative enactments at present limit the clerk's ministerial duties, the clerk is subject to all the legitimate orders of the court. MCL 600.571(g); *Smith v Kent Circuit Judge*, 139 Mich 463, 464; 102 NW 1905 (1905).

## CONCLUSION

I agree with the majority's conclusion that the issues presented in this case are moot but should be addressed at this time. Additionally, I agree that the constitution protects the clerk's function as custodian of circuit court records. Finally, I agree that there is no conflict between the statutes regulating the duties of the clerk of the court and the court rules.

Beyond these limited observations, I cannot agree with the majority opinion.

Marilyn Kelly

7