WEAVER, J.
(concurring in part and dissenting in part). I dissent from the holding of the majority of four (Chief Justice TAYLOR and Justices CORRIGAN, YOUNG, and MARKMAN) that plaintiffs do not have standing to challenge the domestic-partner benefits offered by defendant Ann Arbor Public Schools to its employees. By basing its decision on faux constitutional principles of standing, the majority of four has further manipulated and eroded Michigan’s traditional doctrine of standing. The majority’s holding in this case is an example of the majority of four’s misuse of the power of interpretation. The majority of four overturns long-established law to create new law, not based in our Michigan Constitution. I would hold that MCL 129.61 grants standing to parties when they meet the requirements set forth in the statute and that, because plaintiffs met the demand requirement of MCL 129.61, plaintiffs have standing to challenge the benefits offered by the Ann Arbor Public Schools. I would therefore reverse the Court of Appeals judgment holding that plaintiffs failed to meet the demand requirement of MCL 129.61. However, I would not remand this case to the trial court to decide the *367 substantive issues raised by plaintiffs. I would instead hold this case in abeyance for Nat’l Pride at Work, Inc v Governor, a case in which this Court granted leave to appeal to determine whether public employers may offer benefits to same-sex partners of public employees.[1]
I. FACTS
Plaintiffs are individual taxpayers who filed suit under MCL 129.61 to compel defendant Ann Arbor Public Schools (AAPS) to halt the expenditure of public funds defendant used to provide benefits for same-sex domestic partners of school district employees.[2] Plain-tiffs alleged that the expenditure of public funds to provide for same-sex domestic-partnership benefits violates MCL 551.1[3] by recognizing same-sex relationships as the equivalent of marriage.
*368 Before filing suit, plaintiffs sent letters by certified mail to various public officials,[4] informing the public officials of the allegedly illegal activity. In the letters, plaintiffs stated:
I [or We] write to request that you investigate and halt the use of public funds to provide so-called “domestic partnership” benefits to employees of the Ann Arbor public schools. I [or We] believe that the School District’s extension of these benefits to its employees exceeds its authority and violates the state law governing marriage. I [or We] ask that you halt this illegal use of public funds at your earliest possible convenience.
When no action was taken by the public officials, plaintiffs filed the instant lawsuit. The trial court dismissed the case on motion for summary disposition, ruling that plaintiffs had failed to meet the requirements to bring a suit outlined in MCL 129.61.[5] On appeal, the Court of Appeals affirmed the trial court, holding that plaintiffs had failed to satisfy the demand requirement of MCL 129.61.[6]
Plaintiffs applied for leave to appeal in this Court, and we heard oral argument on whether to grant leave to *369 appeal with respect to the issue of what constitutes an effective demand under MCL 129.61. See 474 Mich 1120 (2006). We then granted leave to appeal. 477 Mich 924 (2006). However, rather than asking the parties to brief only the issues decided in the lower courts, this Court also asked the parties to brief the issue whether MCL 129.61 could grant standing in light of the majority of four’s holding in Nat’l Wildlife Federation v Cleveland Cliffs Iron Co.[7] Id.
II. THE MAJORITY OF FOUR’S ASSAULT ON STANDING IN MICHIGAN
The majority of four has taken this case, involving the important and controversial issue whether public employers can offer same-sex benefits to public employees, and turned it into a crucial step along its path toward the decimation of the traditional legal doctrine of standing in Michigan.
Beginning with Lee v Macomb Co Bd of Comm’rs,[8] a case involving the interpretation of MCL 35.21, the majority overruled Michigan precedent establishing prudential standing as the traditional doctrine of legal standing in Michigan.[9] In place of Michigan’s doctrine *370 of prudential standing, the majority created for Michigan a constitutional doctrine of standing based on the federal courts’ test for standing, as stated in Lujan v Defenders of Wildlife.[10]
In Nat’l Wildlife, the majority of four, through lengthy dicta, attacked the Michigan Environmental Protection Act (MEPA) as unconstitutional, stating that MEPA granted too much power to the Court through its provision granting standing to any person.[11] *371 Meanwhile, the majority held that the plaintiffs in Nat’l Wildlife had standing because they met the federal constitutional standing doctrine adopted by the majority in Lee. Thus, despite the lengthy discourse by the majority on the subject, the issue whether the Legislature could grant standing to any citizen, under the test adopted by Lee, remained unresolved.
In my Nat’l Wildlife concurrence, I stated that by writing such extensive dicta on the subject of citizen-suit standing in a highly publicized case: “The majority can wait for a future case that has not drawn public attention to openly and directly declare the MEPA citizen-suit standing provision unconstitutional.”[12]
Although the underlying substantive issue of same-sex benefits in the instant case has stirred up controversy and publicity, the issue has already been decided by the Court *372 of Appeals in Nat’l Pride at Work, an appeal that we will review in the coming term. Thus, for all practical purposes, the majority’s procedural opinion in this case changes nothing for either side in the debate over same-sex benefits. By deciding that the Legislature cannot grant standing in this case, however, the majority has managed to slip in a major blow to Michigan’s traditional doctrine of standing. The majority can now use this holding to declare that statutes such as MEPA unconstitutionally grant standing to citizens, and to avoid the inevitable firestorm that would follow by directly holding so in a case in which the opinion actually has significance to the parties involved. See Michigan Citizens for Water Conservation v Nestlé Waters North America Inc, 479 Mich 280; 737 NW2d 447 (2007), in which the majority indeed applies the holding in this case to declare that MEPA unconstitutionally grants standing to citizens.
Today, the majority not only declares that the Legislature cannot constitutionally grant standing to citizens, it does so by extensively quoting its dicta from Nat’l Wildlife. As the majority in Nat’l Wildlife admitted, its discussion of the Legislature’s ability to grant standing was “simply dicta.”[13] The majority’s manipulation of dicta to create quotable references designed to affect future holdings is truly indicative of the majority’s assault on Michigan’s traditional, prudential doctrine of standing. Starting with Lee, the majority set the stage to create its standing doctrine, slipping in pieces of dicta along the way in Nat’l Wildlife, all so that it could quote itself in future opinions.
The majority has manipulated its own opinions to create its own doctrine of law for standing in Michigan by overruling precedent and by replacing that *373 precedent with a doctrine it characterizes as being based on the Michigan Constitution. By making standing a constitutional concern, the majority has taken the area of legal standing out of the hands of the Legislature and the people and placed it exclusively at this majority’s mercy. To make standing a constitutional concern when our Michigan Constitution is completely silent regarding which of the government’s branches has power to grant standing represents judicial activism of the most objectionable sort. A power that was once available to all citizens of Michigan, the power to bring a lawsuit, can now only be reclaimed by constitutional amendment. The majority has created its own definition of “judicial power,” based on the case-or-controversy limitations of the judicial power specifically enumerated by the United States Constitution for the federal courts,[14] and adopted it as some type of inherent quality of the Michigan Constitution.
The majority interjects the term “case-or-controversy” into the Michigan Constitution in order to conclude that MCL 129.61 is unconstitutional. By interjecting the term “case or controversy” into the Michigan Constitution, the majority obscures the plain language of the most important document in Michigan’s legal system. Further, the majority holds a statute unconstitutional when, as this Court has long recognized, this Court must presume that the Legislature would not violate the constitution.[15] The majority is adopting a term it infers from the Michigan Constitution and using that inference as a means to defeat the presumption of constitutionality inherent in all Michigan legislation.
*374 As the majority points out, ante at 353-354, before the decision in Lee, this Court did not address standing as a constitutionally based test.[16] The majority correctly states that in House Speaker v Governor, this Court concluded “that because the civic groups met the requirements of MCR 2.201(B)(4),[17] a court rule that in essence gives qualifying persons or groups the right to sue without an injury, they could sue.” Ante at 353-354. While the majority may find it “inexplicabl[e]” or “puzzling[ ]” that this Court in House Speaker would *375 use such an analysis to give citizens standing,[18] it is a puzzle that does not require much thought to solve and explain. This Court applied MCR 2.201(B)(4) in House Speaker because, at that time, Michigan followed a prudential standing test, rather than a constitutionally based standing test created by the majority of four. Court rules and statutes could, at that time, be used to grant standing even when the plaintiffs did not suffer a concrete injury to themselves or their representatives.[19] The majority in Lee overruled the traditional prudential standing doctrine and instead creatively adopted for Michigan the federal constitutional standing test, despite no relevant change in the Michigan Constitution or applicable Michigan codified law.
In fact, in Miller v Grandy,[20] an 1865 case cited by the majority for the proposition that taxpayers in Michigan do not have standing to sue, this Court applied the traditional prudential standing test. Until Lee, this Court analyzed standing without resorting to the Michigan Constitution, even though the Michigan Constitution has always included reference to the courts’ “judicial power” that the majority now cites as support for its creative conclusion that an implied constitutional power to determine standing belongs only to the judicial branch.[21]
The most important difference between pre-Lee and post-Lee standing doctrine is that, post-Lee, standing is now a constitutional concern. Regardless of what stand *376 ing test was used before Lee was decided, standing was never grounded in the Michigan Constitution. The Legislature could always confer standing on citizens without concern for violating the separation of powers doctrine.
For the reasons stated, I cannot agree with the majority that MCL 129.61 unconstitutionally grants standing to citizens, because I cannot agree that standing is rooted in the Michigan Constitution. The majority has gone too far in creating its own standing test as a constitutional test. It has taken away a valuable power from the Legislature and the people of Michigan. I believe that, even when a plaintiff does not meet the three-part test adopted by the majority in Lee, the Legislature is not barred by the Michigan Constitution from granting standing to that plaintiff.
III. PLAINTIFFS SATISFIED MCL 129.61
While I dissent from the majority’s holding that plaintiffs lack constitutional standing, I agree with and concur in the majority’s analysis of the plaintiffs’ compliance with the requirements outlined in MCL 129.61, contained in part III of the majority opinion, in which the majority holds that plaintiffs satisfied the demand requirement of MCL 129.61.
IV. CONCLUSION
I would hold that MCL 129.61 grants standing to parties when they meet the requirements set forth in the statute and that, because plaintiffs met the demand requirement of MCL 129.61, plaintiffs have standing to challenge the benefits offered by defendant Ann Arbor Public Schools.
*377 I would reverse the Court of Appeals judgment that plaintiffs failed to meet the demand requirement of MCL 129.61.1 would not remand this case to the trial court to decide the substantive issues raised by plaintiffs. I would instead hold this case in abeyance for Nat’l Pride at Work, a case in which this Court will determine whether public employers may offer benefits to same-sex partners of public employees.
The holding by the majority in this case is a. victory for neither side in the contentious debate over the constitutionality of same-sex benefits for public employees. Rather, it is a defeat for all the people of Michigan, who now have to contend with the majority’s unrestrained decision that the Legislature cannot grant legal standing to the citizens of this state.

 Nat’l Pride at Work, Inc v Governor, 478 Mich 862 (2007).

 MCL 129.61 provides, in pertinent part:
Any person or persons, firm or corporation, resident in any township or school district, paying taxes to such political unit, may institute suits or actions at law or in equity on behalf of or for the benefit of the treasurer of such political subdivision, for an accounting and/or the recovery of funds or moneys misappropriated or unlawfully expended by any public officer, hoard or commission of such political subdivision. Before such suit is instituted a demand shall be made on the public officer, board or commission whose duty it may be to maintain such suit followed by a neglect or refusal to take action in relation thereto.

 MCL 551.1 states:
Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting that unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.

 Plaintiffs sent letters to the Governor of the state of Michigan, legal counsel for the Executive Office of the state of Michigan, the Attorney General of the state of Michigan, the Superintendent of Public Instruction in the state of Michigan, the Assistant Superintendent of Public Instruction, the Washtenaw County Prosecutor, nine members of the AAPS Board of Education, and the Superintendent of the AAPS.

 Thus, the substantive issues of this case have not been argued. However, in Nat’l Pride at Work, Inc v Governor, 274 Mich App 147; 732 NW2d 139 (2007), the Court of Appeals held that Const 1963, art 1, § 25, a recent amendment of the Michigan Constitution, forbids public employers from offering same-sex domestic-partnership benefits. We have since granted leave to appeal in Nat’l Pride at Work. See 478 Mich 862 (2007).

 Rohde v Ann Arbor Pub Schools, 265 Mich App 702; 698 NW2d 402 (2005).

 Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004).

 Lee v Macomb Co Bd of Comm’rs, 464 Mich 726; 629 NW2d 900 (2001).

 Before Lee, the Michigan standing requirements were based on prudential, rather than constitutional, concerns. See, generally, House Speaker v State Administrative Bd, 441 Mich 547, 559 n 20; 495 NW2d 539 (1993), and Justice Riley’s concurrence in Detroit Fire Fighters Ass’n v Detroit, 449 Mich 629, 643; 537 NW2d 436 (1995). The prudential standing test is a long-established test that was used by this Court to provide a standard for litigants to meet in order to have standing to sue. The prudential test requires “a demonstration that the plaintiffs substantial interest will be detrimentally affected in a manner different from the citizenry at large.” House Speaker, supra at 554. The prudential test was never grounded in the Michigan Consti *370 tution, because the Michigan Constitution is silent on standing. Thus, standing could, throughout the history of Michigan, be altered by statutes such as MCL 129.61.

 Lujan v Defenders of Wildlife, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992). The Lee majority, quoting Lujan, stated:
“First, the plaintiff must have suffered an ‘injury in fact’ — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) ‘actual or imminent, not “conjectural” or “hypothetical.” ’ Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be ‘fairly... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court.’ Third, it must be ‘likely,’ as opposed to merely ‘speculative,’ that the injury will be ‘redressed by a favorable decision.’ ” [Lee, supra at 739, quoting Lujan, supra at 560-561.]
The Lee majority adopted the Lujan test as a constitutionally based test for standing, under a theory that Const 1963, art 6, § 1, which vests the state courts with “judicial power,” granted the Michigan judicial branch only the same limited judicial power bestowed on the federal courts under article III of the United States Constitution.

 The majority concluded that MEPA was granting the judiciary the “executive power” to enforce laws, expanding the judiciary’s power beyond the constitutional “judicial power.” While the majority feigned judicial restraint, it was in truth engaging in judicial activism. The majority based its analysis on its self-adopted definition of the term “judicial power,” a term contained in Const 1963, art 6, § 1. The Michigan Constitution does not define “judicial power,” so the majority turned to federal law for a definition; specifically the majority relied on article III of the United States Constitution. But the majority of four’s statement in Michigan Chiropractic Council v Comm’r of the *371 Office of Financial & Ins Services, 475 Mich 363, 369; 716 NW2d 561 (2006), reveals the United States Constitution’s key variation from the Michigan Constitution. The majority stated: “Our tripartite system of government is constitutionally established in both our state and federal constitutions. US Const, art III, § 1 confers upon the' courts only ‘judicial power’; US Const, art III, § 2 limits the judicial power to ‘Mases’ and ‘Montroversies.’ ” Id. The problem with the majority’s comparison between the Michigan Constitution and the federal constitution is that only US Const, art III, § 2 sets out a case-or-controversy limitation. Similar to that contained in the Michigan Constitution, the general idea of judicial power contained in US Const, art III, § 1 is very broad. It is then specifically limited by US Const, art III, § 2. The Michigan Constitution contains no corresponding limitation. Thus, the majority misinterprets what the general federal judicial power entails, and instead defines the power by its own limitations set out in a subsequent section of the federal constitution. To make matters worse, the majority then defines Michigan’s judicial power by the federal limitations, even though the Michigan Constitution lacks a similar limitation. The result is the majority’s self-created, inferred case-or-controversy standard governing standing in Michigan.

 Nat’l Wildlife, supra at 653-654 (Weaver, J., concurring in the result only).

 Nat’l Wildlife, supra at 649 n 33.

 See n 11 of this opinion.

 People v McQuillan, 392 Mich 511, 536; 221 NW2d 569 (1974).

 As I wrote in my concurrence in Lee:
In House Speaker we stated that “this Court is not bound to follow federal cases regarding standing,” pointing out that “[o]ne notable distinction between federal and state standing analysis is the power of this Court to issue advisory opinions. Const 1963, art 3, § 8. Under Article III of the federal constitution, federal courts may issue opinions only where there is an actual case or controversy.” [House Speaker, supra at] 559, including n 20. Justice Kennedy, writing for the Court in ASARCO Inc v Radish, 490 US 605, 617; 109 S Ct 2037; 104 L Ed 2d 696 (1989), acknowledged:
“We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability.. . .” [Lee, supra at 743 n 2.]

 MCR 2.201(B)(4) provides:
An action to prevent illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure may be brought:
(a) in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes; or
(b) in the names of at least 5 residents of Michigan who own property assessed for direct taxation by the county where they reside.
The statutory counterpart to this court rule is MCL 600.2041(3).

 Ante at 353.

 Under House Speaker, plaintiffs in this case would have standing to sue because they have complied with MCL 129.61. As discussed in part III of this opinion, plaintiffs can bring a suit or action at law under MCL 129.61 on behalf of a political subdivision for the recovery of misappropriated funds.

 Miller v Grandy, 13 Mich 540 (1865).

 See, e.g., Const 1835, art 6, § 1; Const 1850, art 6, § 1; Const 1908, art 7, §1.